UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
PETER GRAZIANO, JAMES BUCKLEY, MARK
MALONE, ROBERT A. HARRIS, WILLIAM
WALKER, AARON TALLEY, MAURICE
MURRELL, STEVEN HO, BRIAN JACQUES and
CHARLES FRIEDGOOD, suing on behalf of
themselves and all others similarly situated,

                          Plaintiffs,

                                                    06 Civ. 0480 (CLB)

          - against -
                                                    ***Memorandum and Order***

GEORGE E. PATAKI, Governor of the State of
New York, ROBERT DENNISON, Chairman of the
New York State Division of Parole, and THE
NEW YORK STATE DIVISION OF PAROLE,

                          Defendants.
-----------------------------------------------------------------x
Brieant, J

          Before the Court in this prisoner civil rights case, filed as a class action, is a motion to

dismiss the Complaint (Doc. Nos. 8, 9) filed on April 28, 2006.  Opposition papers were filed

May 25, 2006 and reply papers were filed June 9, 2006.  Oral argument was held on June 16,

2006.  No motion for class certification has yet been filed, but for ease of reference the Court

may hereinafter refer to the case as a class action.


          Unless otherwise noted, the following facts are assumed true for purposes of this motion

only.  The ten named individual Plaintiffs sue on behalf of themselves and all others similarly

situated for violations of due process and equal protection under the Fourteenth Amendment, and

for violations of the *ex post facto* clause.  They argue that they have been denied full, fair and

balanced parole hearings as required to be conducted pursuant to the provisions of New York

State Executive Law §259-1, and as a result have been subjected to unconstitutional enhancements of their sentences.  All of the named plaintiffs were convicted of second degree murder by trial or plea, and several have additional crimes attached to their record.

Defendant Governor Pataki is being sued in his official capacity only.  Defendant New York State Division of Parole is a 19-member Board of Parole with statutory responsibility for determining whether parole-eligible prisoners will be released.  Defendant Robert Dennison was confirmed in June of 2000, as Chairman and Chief Executive Officer of the New York Division of Parole, and is sued only in his official capacity.

In the last several years during the tenure of Governor George E. Pataki, there has been commentary and speculation on what is perceived by some to be a sudden sharp curtailing of the number of parole grants for entire classes of otherwise eligible offenders.  This statistically apparent policy change is perceived to be based on the fact that they have committed crimes of great violence such as murder.  Certain state court judges and panel scholars have remarked on what they consider to be an undeniable inference that something has changed within the Parole Board, with respect to crimes of great violence while the statutory bases for the exercise of its discretion, common to all cases, remains unchanged.

In this action, Plaintiffs allege that since 1995, the "Board of Parole has been issuing parole determinations pursuant to an unofficial policy of denying parole release to prisoners convicted of A-1 violent felony offenses, solely on the basis of the violent nature of such

offenses and thus without proper consideration to any other relevant or statutorily mandated factor." *First Amended Complaint ("Complaint") at* ¶ 31. Plaintiffs allege that the "unofficial policy of the Parole Board was instigated by [Governor] Pataki and has been implemented and executed by the Division of Parole under Parole Chairman Robert Dennison," contrary to and in violation of New York State Executive Law §259-I, which provides that several enumerated factors must all be considered in deciding whether to grant parole in a specific case. These include, but are not limited to the seriousness of the offense, the type of sentence, the length of sentence, the pattern of offenses, the inmate's institutional record, including program goals and accomplishments, academic achievements, therapy and interpersonal relationships with staff and inmates. *Complaint at* ¶¶ 32, 33. Plaintiffs contend that the unofficial policy allegedly executed by the Parole Board is "in conflict with, and completely ignores the rehabilitative goals embodied in the provisions of the N.Y.S. Executive Law and Penal Law and contravenes the discretionary scheme mandated by these statutes." *Complaint at* ¶ 36.

Plaintiffs contend that the Defendants' "unofficial policy precludes and/or substantially curtails the Parole Board's full and meaningful consideration of the statutorily mandated factors," and that the Parole Board bases its parole decisions for prisoners serving sentences for A-1 violent felonies upon impermissible factors. *Complaint at* ¶ 3. Plaintiffs allege that this unofficial policy has resulted in denials of parole that have been arbitrary and capricious and speculate that obtaining grants of federal money has been one of the motives for effecting a plunging parole release rate for violent criminals. *See Oppo. Memo at 2-4.* They cite to statistics illustrating that there has been a significant decline since 1995 in parole releases for prisoners

serving sentences for A-1 violent offenses. Attached to the Complaint are summaries of the

Parole Board Interviews and Release Rates for Fiscal Year ("FY") 1991-1992 through 2002-

2003, the Board decisions by Summary Crime Categories for 1992-1993 through 2002-2003, and

the Board decisions by Crime of Commitment for FY 1991-1992 through 2002-2003. *Complaint

at Ex. A.* Plaintiffs also refer to recent attention brought to this subject in an article in the New

York Law Journal in which it was reported that the percentage of A-1 violent felons paroled each

year had fallen from a high of 28% under Governor Cuomo to 3% in 2004-2005 under Governor

Pataki. *Oppo. Memo at 2, citing to 'Dismantling Parole: Parole Release Rates Plunge Under

Pataki's Tough Policy,"* New York Law Journal, January 31, 2006.

Plaintiffs contend that such a policy exists and has led to unequal treatment of prisoners

convicted of A-1 violent felony offenses as compared to prisoners who are not serving sentences

for such offenses, "in that the single criterion - the nature of the present offense - is all that is

being given weight or consideration in the Board's determinations as to whether prisoners

convicted of A-1 violent felony offenses will be granted parole release, while due consideration

is being given to other statutory criteria in determining whether other prisoners not so convicted

will be granted parole release." *Complaint at ¶ 37.*

Plaintiffs contend that the execution of this policy has also led to violations of their due

process rights, because as a result of this policy, the denials of the parole release to class

members "have been and continue to be arbitrary and capricious, based upon impermissible

political and economic" reasons. They argue that execution of the policy of denying them parole

without proper consideration of all relevant statutory factors constitutes unauthorized action in violation of Plaintiffs' rights to due process guaranteed by the Fourteenth Amendment. *Complaint at* ¶ 38.

Plaintiffs finally assert violations of the *ex post facto* clause, asserting that the Parole Board's policy has "brought about an ex post facto enhancement of the punishments imposed upon the named plaintiffs and members of the prospective class at their respective sentencings and thereby violates U.S. Const. Art. 1, §10, cl. 1." *Complaint at* ¶ 39.

Plaintiffs acknowledge, as they must, that there have been numerous similar recent challenges in the New York State Supreme Courts through Article 78 proceedings and in the federal courts through §1983 proceedings, in which it has been argued that the Parole Board has been dismantling parole, in refusing to give meaningful and balanced consideration to the various factors required by law and by giving undue weight to the violent nature of prisoners' crimes. They distinguish this class action as focusing their challenge "not just on their own individual parole determinations, but on the unlawful manner in which the Pataki Parole Board is issuing adverse parole determinations on a class-wide basis," and thereby failing to exercise its discretion. *Oppo. Memo at 5.* They argue that the Board has instead been "carrying out an Executive agenda, which calls for the elimination of parole for practically all A-1 violent felons." *Oppo. Memo at 6.*

Defendants move to dismiss the Complaint for failure to state a claim of violations of due

process, equal protection and the *ex post facto* clause, contending, *inter alia*, that there exists no such policy to deny parole outright to A-1 violent offenders and that Plaintiffs ignore the fact that their sentences involve a maximum sentence range of life imprisonment.

*Proposed Class & Subclass*

Plaintiffs submit that members of the class are estimated to be in the thousands and are therefore so numerous to render joinder impracticable. The named Plaintiffs seek to represent a class comprised of all prisoners in the custody of the New York State Department of Correctional Services who:

> 1) were convicted of A-1 violent felony offenses;
>
> 2) have served the minimum terms of their indeterminate sentences and are therefore eligible for parole release; and
>
> 3) have had their most recent applications for parole release denied by the Parole Board solely because of the "seriousness of the offense," the "nature of the present offense," or words to that effect, and in some cases, their prior criminal history.

*Complaint at ¶ 3.*

Nine out of the ten named Plaintiffs (not Plaintiff Friedgood), also seek to represent a sub-class of prisoners who meet the same defining factors of the main class as set forth above, but who were also sentenced to *less* than the statutory maximum term of imprisonment - 25 years to life - for their violent offenses.

The proposed class period for the class and subclass commences three years before the date the action was filed. The case was filed January 23, 2006, therefore the proposed class

period begins January 23, 2003, and extends "until such date when the defendants are enjoined from, or otherwise cease, the unconstitutional manner in which the Parole Board is denying parole release to the plaintiffs and members of the proposed class and/or subclass." *Complaint at* ¶ 5.

*Abstention*

At the outset, the Court will address Defendants' suggestion that this Court should abstain from deciding this issue under *Pullman* for purposes of comity, federalism, and New York's separation of powers, and under *Younger*, for Plaintiffs Walker and Friedman, each of whom, they argue, has the same claims pending in state court.

> Abstention under the Pullman doctrine may be appropriate when three conditions are met: (1) an unclear state statute is at issue; (2) resolution of the federal constitutional issue depends on the interpretation of the state law; and (3) the law is susceptible "to an interpretation by a state court that would avoid or modify the federal constitutional issue." *Greater New York Metro. Food Council v. McGuire*, 6 F.3d 75, 77 (2d Cir. 1993) (per curiam). Satisfaction of all three criteria does not automatically require abstention, however. "The doctrine of abstention . . . is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it."

*Vermont Right to Life Comm. v. Sorrell*, 221 F.3d 376, 385 (2d Cir. 2000).

Plaintiffs oppose abstention, arguing that there is no unclear state statute involved, as the plain meaning of New York Executive Law §259-I and New York Penal Law §70.00 is not in dispute, and that sensitive issues of federalism are not involved. The Court recognizes that the issue presented is an extremely sensitive one. Human liberty interests are implicated, counter-balanced by societal interests in punishment and prevention of violent crime, as well as state separation of powers principles. The Court nevertheless declines to abstain, as the state law is

not, in this Court's view, unclear and the extraordinary recourse of abstention is not necessary. Insofar as concerns *Younger* abstention, it would apply only to two of the named plaintiffs, so the Court declines to consider that issue at this stage of the litigation.

*Discussion*

In considering a motion to dismiss under Rule 12(b)(6), the Court is obliged to accept the well-pleaded assertions of fact in the complaint as true and to draw all reasonable inferences and resolve doubts in favor of the non-moving party. *See Kaluczky v. City of White Plains*, 57 F.3d 202, 206 (2d Cir. 1995). The focus of the Court's inquiry is not whether plaintiffs will ultimately prevail, but whether the plaintiffs are entitled to an opportunity to offer evidence in support of their claims. Therefore a motion to dismiss must be denied unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle plaintiff to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

*Parole in New York*

Parole in New York is entirely a creature of statute. "There shall be in the executive department of state government a state division of parole. The chairman of the state board of parole shall be the chief executive officer of the division." N.Y. Exec. Law § 259 (1). "There shall be in the state division of parole a state board of parole which shall possess the powers and duties hereinafter specified. Such board shall consist of not more than nineteen members appointed by the governor with the advice and consent of the senate. The term of office of each member of such board shall be for six years." N.Y. Exec. Law § 259-b(1). "The governor shall

designate one of the members of the board as chairman to serve in such capacity at the pleasure

of the governor or until the member's term of office expires and a successor is designated in

accordance with law, whichever first occurs." N.Y. Exec. Law § 259-b(3).


The state board of parole shall "have the power and duty of determining which inmates

serving an indeterminate or determinate sentence of imprisonment may be released on parole,"

N.Y. Exec. Law § 259-c(1), and shall "establish written guidelines for its use in making parole

decisions as required by law, including the fixing of minimum periods of imprisonment or ranges

thereof for different categories of offenders." *Id.* at § 259-c(4). New York's law provides that:

> Discretionary release on parole shall not be granted merely as a reward for good conduct
> or efficient performance of duties while confined but after considering if there is a
> reasonable probability that, if such inmate is released, he will live and remain at liberty
> without violating the law, and that his release is not incompatible with the welfare of
> society and will not so deprecate the seriousness of his crime as to undermine respect for
> law.

N.Y. Exec. §259-i(2)(c)(A). It also provides:

> In making the parole release decision, the guidelines adopted pursuant to subdivision four
> of section two hundred fifty-nine-c of this article shall require that the following be
> considered: (I) the institutional record including program goals and accomplishments,
> academic achievements, vocational education, training or work assignments, therapy and
> interpersonal relationships with staff and inmates; (ii) performance, if any, as a
> participant in a temporary release program; (iii) release plans including community
> resources, employment, education and training and support services available to the
> inmate; (iv) any deportation order issued by the federal government against the inmate
> while in the custody of the department of correctional services and any recommendation
> regarding deportation made by the commissioner of the department of correctional
> services pursuant to section one hundred forty-seven of the correction law; and (v) any
> statement made to the board by the crime victim or the victim's representative, where the
> crime victim is deceased or is mentally or physically incapacitated.

*Id.* The law permits appeal of parole determinations as follows:

Except for determinations made upon preliminary hearings upon allegations of violation of presumptive release, parole, conditional release or post-release supervision, all determinations made pursuant to this section may be appealed in accordance with rules promulgated by the board. Any board member who participated in the decision from which the appeal is taken may not participate in the resolution of that appeal. The rules of the board may specify a time within which any appeal shall be taken and resolved.

NY Exec. § 259-i(4)(A).

The New York Court of Appeals has held:

As the Supreme Court has recently stated, referring to the Federal parole system, in *United States v Addonizio* (442 U.S. 178, 190): "The import of this statutory scheme is clear: the judge has no enforceable expectations with respect to the actual release of a sentenced defendant short of his statutory term. The judge may well have expectations as to when release is likely. But the actual decision is not his to make, either at the time of sentencing or later if his expectations are not met. To require the Parole Commission to act in accordance with judicial expectations, * * * would substantially undermine the congressional decision to entrust release determinations to the Commission and not the courts."

*Russo v. New York State Board of Parole*, 50 N.Y.2d 69, 76-77 (N.Y. 1980).


*Due Process Claim*

Defendants argue that the Board's denials have not been arbitrary, capricious, or otherwise unlawful, and that there exists no *policy* to deny parole to violent criminals based solely on the nature or severity of their crimes. They assert that "it is well-established that the Board may deny parole based upon the nature and severity of the underlying crime as long as it has taken the other statutory factors into consideration." *Memo at 20.* The Court agrees, but notes here that the allegation in this case is that the other statutory factors are not actually taken into consideration in connection with A-1 felons, and that this occurred and continues under a *policy,* rather than on an individualized process of decision-making.

Plaintiffs argue that prior courts could not fully address the allegation in this case, which is that the Parole Board is not exercising statutory discretion, but is instead carrying out a policy, or Executive agenda, which calls for the elimination of parole for practically all A-1 violent felons. They argue that reviewing state courts have thus far only considered this type of case on an individual case-by-case basis, and accordingly could not have perceived an illegal policy, as is alleged to exist in this litigation, of denying parole on the singular basis of the violent nature of the crime. Plaintiffs contend that:

> With only one parole decision being reviewed per judicial proceeding, the Attorney General was always able to argue, and the courts were always able to accept, that, in the discretionary judgment of the Parole Board, the *particular* circumstances of the crime in question, as recited in the Board's decision, had some rational bearing upon whether the prisoner ought to be released at that time. But what becomes obvious when reading dozens of these parole decision at a single sitting, rather than just one at a time, is that there is nothing unique or particularly telling about most of the facts and circumstances that these decisions describe and are based on. The Board is simply describing murders and denying parole - nothing more than that. It becomes obvious, ... that the Board is denying parole to practically every prisoner who is serving time for murder, just because that prisoner committed murder and for no other reason, no matter how well that prisoner may have done in prison and no matter how well he may have prepared himself for a law abiding life on the outside.

*Oppo. Memo at 7.*

Plaintiffs argue that in this class action the "Court will have the entire picture and that picture makes it abundantly clear that, because of an Executive mandate, the plaintiffs and class members' "hopes for parole [have been] doomed from the start." *Oppo. Memo at 8*, citing *Cappiello v. New York State Bd. of Parole,* 6 Misc.3d 1010(A), 2004 WL 3112629 at **6 (N.Y. Sup.). Defendants contend that when a panel finds that the gravity of violence in a particular inmate's crime outweighs any positive factors, and denies parole on that basis, it reflects a

societal desire for enhanced safety, and as a matter of law does not reflect or constitute a prohibited policy to deny parole to A-1 violent felons. Perhaps this is the most likely reality, however, the Court reads the Complaint, in the light most favorable to Plaintiffs, to assert a claim that there is in fact a policy, and under the policy, each Plaintiff's status as an A-1 violent offender predetermines the outcome of the parole decision, notwithstanding any positive factors, and that this is in violation of New York law. Accordingly, the Complaint pleads facts, the validity or truth of which may not be determined on a Rule 12(b)(6) motion.

Plaintiffs "readily acknowledge that a New York State prisoner does not have a constitutional right to parole release." *Oppo. Memo at 12*. They acknowledge also that "New York's parole scheme gives the Parole Board discretionary authority to grant or deny parole and therefore does not create a legitimate expectancy of release." *Id., citing Barna v. Travis*, 239 F.3d 169, 170-171 (2d Cir. 2001). However, the Board's discretionary authority does not amount to unlimited authority, as the Board is required to apply the three standards and consider the five factors set forth in Executive Law §259-i(2)(c)(a). Plaintiffs argue, and the Court agrees, that even though there is no liberty interest in parole release, there is still a due process liberty interest in "not being denied parole for arbitrary or impermissible reasons" or as the result of "flagrant or unauthorized action," in derogation of the statute. *Oppo. Memo at 12.*

In *Barna v. Davis*, our Court of Appeals held:

The New York parole scheme is not one that creates in any prisoner a legitimate expectancy of release. The State statute creates a parole board that has the power and the duty to determine "which inmates serving an indeterminate . . . sentence of imprisonment may be released on parole . . . and when." N.Y. Exec. Law § 259-c.1. The board is to

12

establish its own guidelines for making such parole decisions. See id. § 259-c.4. The current parole board guidelines state, in pertinent part, that the purpose of the guidelines is to "structure [the parole board's] discretion with regard to [minimum-period-of-imprisonment] and release decisions," that the guidelines "are based on only two major factors--crime severity and past criminal history," and that "they are intended only as a guide, and are not a substitute for the careful consideration of the many circumstances of each individual case." 9 N.Y.C.R.R. § 8001.3(a).

*Barna v. Travis*, 239 F.3d 169, 171 (2d Cir. 2001). The Court also held in that decision that:

> [I]t is apparent that New York's parole provisions . . . do not establish a scheme whereby parole shall be ordered unless specified conditions are found to exist . . . . No entitlement to release is created [by the parole provisions]. Accordingly, plaintiffs have no liberty interest in parole, and the protections of the Due Process Clause are inapplicable.

*Id.* (citations and quotations omitted).

In *Barna*, the Plaintiffs argued on appeal that the State "systematically denies parole to prisoners who were convicted of crimes of violence." *Barna*, 239 F.3d at 170. Although our Court of Appeals clearly held that there is no entitlement or "legitimate expectation of release that is grounded in the state's statutory scheme," this Court concludes as a matter of law that there is an entitlement to a process of decision-making, which comports with the statutory guidelines of consideration to all relevant statutory factors. Expressed differently, the Executive Branch, by adopting a policy as alleged, which constricts or alters the intended operation of the statute, if it did so, would violate Plaintiffs' due process rights. Indeed, Defendants acknowledge that "decisions following *Barna* have recognized that because the Board is required to consider the guidelines set forth in N.Y. Exec. Law §259-i(2)(a), an inmate's due process rights will extend 'only to a refusal by the Board to deny release arbitrarily or capriciously, based upon inappropriate consideration of a protected classification or an irrational distinction, or on any other unconstitutional grounds.'" *Memo at 19-20* (citations omitted). Defendants argue,

however, that in this case, the parole denials challenged were neither arbitrary, nor capricious, nor otherwise unlawful, and that Plaintiffs' due process claims must accordingly be dismissed without taking evidence in support of the allegations of an unlawful policy.

Defendants argue that as "as a matter of law, the Board's determinations in each of the plaintiffs' parole interviews do not constitute a prohibited policy" and that "this contention has been rejected time and again by both federal and state courts in New York," which have found that "as long as the Board has properly considered the statutory guidelines, it may determine that parole should be denied based on the nature and severity of the underlying crime and that such determinations do not constitute a policy to deny parole to inmates who have committed violent crimes." *Memo at 22.* The Court agrees that where a Board has properly considered statutory guidelines, it may in its proper exercise of discretion deny parole where it determines upon a fair consideration of all relevant statutory factors that the nature and severity of the underlying crime outweigh other possibly positive factors.

In this case, however, Plaintiffs do not simply challenge "the way that the Board exercised its discretion in their particular cases," but contend that "the Board is not exercising its discretion, at all." *Oppo. Memo at 5.* They argue that in other Article 78 and §1983 proceedings, a plaintiff could challenge only his own adverse parole decision, and such cases were usually decided against the individual Plaintiff, because of the reasoning that the well-settled state law of New York is that a Parole Board's decision is discretionary, resulting in no due process liberty interest in parole release; that the seriousness of a person's crime is a valid

consideration; and that it was within the Board's discretion to deny parole release.

If there were proved to exist an unpublished official policy as alleged, imposed upon and implemented by the Board, which dictated the outcome of parole decisions for certain prisoners in contravention of the statutorily required process of determining an individualized outcome, Plaintiffs would have asserted a viable claim. They should be entitled to submit evidence in support of their non-frivolous allegations. Without suggesting that he has done so, the Court can hold with confidence that the Governor would not be permitted to effect a "policy" as an end run around the legislature, in order to accomplish a goal of amending the statutory criteria to deny parole to a class of violent offenders.

Such an end run is precisely what is alleged by the Plaintiffs. The abrupt and steep decline in the grant of parole in A-1 cases (*see supra,* pages 2-4) is at least circumstantial evidence suggesting that such a policy exists. Although there is no due process right to be granted parole, this Court concludes that there exists a Constitutional right to have a parole decision made in accordance with the statute.

> The role of the Parole Board is ... to determine whether, as of this moment, given all the relevant statutory factors, he should be released. In that regard, the statute expressly mandates that the prisoner's educational and other achievements affirmatively be taken into consideration in determining whether he meets the general criteria relevant to parole release under section 259-i(2)(c).

*King v. New York State Division of Parole*, 190 A.D.2d 423, 432 (N.Y. App. Div. 1993). In *King*, the Appellate Division also held:

> [W]hile the courts remain reluctant to second-guess the decisions of the Board, it is unquestionably the duty of the Board to give fair consideration to each of the applicable

15

statutory factors as to every person who comes before it, and where the record convincingly demonstrates that the Board did in fact fail to consider the proper standards, the courts must intervene.

*Id.* at 431. In that case, the Court held that "the record clearly reveals that the denial of petitioner's application was a result of the Board's failure to weigh all of the relevant considerations and there is a strong indication that the denial of petitioner's application was a foregone conclusion." *Id. at* 431-432 (N.Y. App. Div. 1993). The same is alleged in the case at bar, and that is all that is needed to defeat a Rule 12(b)(6) motion.

This Court discerns a meaningful distinction in theory between a challenge to the process of determining a parole decision, and a challenge of the actual outcome. While adhering to the Court of Appeals' holding that prisoners have no liberty interest in being *granted* parole, so as to invoke the protections of the due process clause, it is nevertheless understood that if, as alleged, there were to exist an "unofficial policy or practice of the Parole Board," to "unlawfully eliminate or substantially curtail the Parole Board's discretion concerning prisoners serving sentences for A-1 violent offenses" and to have the Parole Board "deny parole release to such prisoners solely on the basis of the violent nature of their present offenses," as clearly alleged in the Complaint, that this would constitute a violation of a due process right to have a parole decision made according to the legislatively enacted criteria. *See Complaint at ¶ 2.* In other words, while there is no due process right to being *granted* parole, there is a due process right to have the decision made only in accordance with the statutory criteria. Although difficulties of proof of the existence of the alleged policy are readily apparent, the Complaint appears to state a claim for a due process violation, which at the very least would support declaratory or injunctive

relief.[1]  It is unclear that any Plaintiff could ultimately prove, in addition to the existence of the alleged policy, that his resulting parole decision would have been different if it had resulted from a fair and balanced consideration of all factors, including, of course, the violent nature of the offense.

The allegation that there exists a policy or practice to deny parole based solely on the nature of the violent offense, enables the Complaint in this case to transcend what all previous Court decisions have addressed, namely, whether a particular parole denial constituted a violation of one or more Constitutional rights.  The Court perceives a distinction inherent in those prior cases, which only challenged the resulting decision, and this Complaint, which challenges the process of reaching a decision.

*Equal Protection Claim*

Plaintiffs contend that they have been denied the benefit of full consideration of all the statutory factors, in contrast to inmates not convicted of A-1 violent crimes.  Defendants argue that Plaintiffs cannot state a claim for an equal protection violation and move to dismiss that claim as well.  They argue that violent felons are not similarly situated to non-violent felons for purposes of equal protection analysis, and that prisoners or A-1 felons are not a suspect class enabling them to state an equal protection claim.  They argue that the Board's exercise of discretion, including giving more weight to one factor than another in reaching an ultimate

---

[1] It seems extremely doubtful that the sudden change in the percentage of parole grants (*see* text at pages 2-4) standing alone, would prove the adoption or existence of the claimed policy.  There are lies, damn lies and statistics.

decision, is exactly what the statute provides. They point to several decisions of the Eastern and Southern Districts of New York in which the courts decided that the Board may, after considering all of the statutory guidelines, determine that parole should be denied based on the nature and severity of the underlying crimes.

The Court disagrees with Defendants' assertion that Plaintiffs are not similarly situated to other (non-violent) prisoners eligible for parole, insofar as every prisoner eligible for parole, is subject to, and deserving of fair consideration of each relevant statutory factor. That the resulting decision could quite likely be legitimately different, according to whether someone is an A-1 violent offender or not, does not change the fact that each individual eligible for a parole determination has a right to actual consideration by proper procedure, rather than to a pre-determined outcome imposed by an unpublished policy, not adopted by the legislature.

The Court concludes that the same distinction addressed *supra* in the due process analysis, between challenging the *outcome* of a parole decision and challenging the *process* of making a parole decision, applies to the equal protection analysis. An A-1 violent offender who is not similarly situated to a non-A-1 violent offender for purposes of being *granted* parole, is nevertheless similarly situated to a non-A-1 violent offender for purposes of *being considered* for parole, according to the statutorily-defined criteria. The violent nature of the offense may obviously be considered, but may not serve to make a denial a foregone conclusion, in contravention of the statutorily-prescribed process of consideration.

*Ex Post Facto Claim*

Defendants argue that a denial of parole does not increase the penalty by which a crime is

punishable and doesn't operate retroactively. Our Court of Appeals has held:

> [There is no] merit in plaintiffs' claims that State parole procedures adopted after they
> were incarcerated violate the Ex Post Facto Clause. That Clause applies only to
> "legislative action that retroactively 'punishes as a crime an act previously committed,
> which was innocent when done,' 'makes more burdensome the punishment for a crime,
> after its commission,' or 'deprives one charged with crime of any defense available
> according to law at the time when the act was committed." *Doe v. Pataki*, 120 F.3d 1263,
> 1272 (2d Cir. 1997) (quoting *Beazell v. Ohio*, 269 U.S. 167, 169-70, 70 L. Ed. 216, 46 S.
> Ct. 68 (1925)). A law that is merely procedural and does not increase a prisoner's
> punishment cannot violate the Ex Post Facto Clause even when applied retrospectively.
> *See California Dep't of Corrections v. Morales*, 514 U.S. 499, 507-09, 131 L. Ed. 2d 588,
> 115 S. Ct. 1597 (1995).
>
> The Ex Post Facto Clause does not apply to guidelines that do not create mandatory rules
> for release but are promulgated simply to guide the parole board in the exercise of its
> discretion.

*Barna v. Travis*, 239 F.3d 169, 171 (2d Cir. 2001).


"[W]here parole is concerned[,] discretion, by its very definition, is subject to changes in

the manner in which it is informed and then exercised." *Garner v. Jones*, 529 U.S. 244 (U.S.

2000). In *Garner,* Georgia's state board of pardons and paroles amended its rules so that the

interval of time between parole considerations was extended to at least every eight years. The

Supreme Court concluded that retroactive application of a law, which increased the maximum

interval of years within which a petitioner could be reconsidered for parole, did not violate the *ex*

*post facto* clause because there was no proof that the amendment created a significant risk of

increased punishment for respondent. The rule gave the Parole Board broad discretion to

schedule reconsideration hearings based on release suitability, and the Supreme Court reversed

and remanded the action because there was no proof that the amended law lengthened

respondent's incarceration.  The High Court held:

> The States are prohibited from enacting an ex post facto law. U.S. Const., Art. I, § 10, cl. 1. One function of the Ex Post Facto Clause is to bar enactments which, by retroactive operation, increase the punishment for a crime after its commission. Retroactive changes in laws governing parole of prisoners, in some instances, may be violative of this precept. Whether retroactive application of a particular change in parole law respects the prohibition on ex post facto legislation is often a question of particular difficulty when the discretion vested in a parole board is taken into account.

*Garner*, 529 U.S. at 249-250 (citations omitted).

Defendants argue that Plaintiffs do not cite "any instance where an *ex post facto* violation is founded upon a parole board's discretionary practice alone, in the absence of any change to governing regulations." *Reply Memo at 12.*  Here, Plaintiffs' claim is that the discretionary practice has been materially altered by an outright policy to deny parole to certain prisoners, regardless of positive considerations.

Because under *Garner*, retroactive application of the policy *may* increase the punishment for a crime after its commission, the Complaint states a claim, although one of "particular difficulty when the [remaining] discretion vested in the parole board is taken into account."  *See Garner, supra.*

*Failure to Exhaust Administrative Remedies*

Defendants argue that the Complaint should be dismissed for failure to allege or show that administrative remedies were exhausted.  They assert that Plaintiffs' claims should be brought individually under 28 U.S.C. § 2254, which requires the exhaustion of state remedies. The Court disagrees.  Due process and equal protection concerns raised by parole determinations

do not necessarily seek to invalidate the underlying conviction or sentence.  Indeed such claims

may be brought under 42 U.S.C. § 1983, without the exhaustion requirement.  *See Wilkinson v.*

*Dotson*, 544 U.S. 74 (2005).


The Court does not read the Complaint to complain literally that the Parole Board re-

sentenced them, but rather that the application of an *ultra vires* policy of the Parole Board to the

Plaintiffs has the effect of "extending their minimum term of imprisonment."  *Oppo. Memo at*

*34-35*.  The Court's present concern is whether a claim has been stated that an alleged policy of

predetermined parole denials deprived Plaintiffs of a statutorily-required process of parole

determination.  Exhaustion is not required.


*Standing of Individual Plaintiffs*

In their reply papers, Defendants for the first time challenge Plaintiffs' standing, arguing

that Plaintiffs' reliance on class allegations and abstract harm prevents the stating of a claim.

Defendants assert that in Plaintiffs' opposition papers, it is clear for the first time that they are

not asserting individualized injury based on the specific facts surrounding their specific parole

denials, but are relying rather upon a global characterization of unlawful practices of the Parole

Board.  Defendants argue that Plaintiffs cannot rely upon the class action mechanism to create a

cause of action where one does not exist, and that Plaintiffs who do not state actual

individualized claims do not have standing to serve as class representatives.


Fairly read, Plaintiffs each assert that an unlawful policy, not a part of the legislative

criteria enacted with respect to parole, exists in New York, and was or will be employed in his

case, and had or will have the adverse effect of causing him to be denied parole. This non-frivolous allegation is sufficient to establish standing.

*Collateral Estoppel*

Defendants assert that three Plaintiffs (Buckley, Graziano, and Jacques) have previously challenged their parole release denials in state courts on substantially the same bases and facts alleged in this case, and that their challenges have been denied. Plaintiffs respond that the individual Plaintiffs have never had a full and fair opportunity to litigate their allegations in this case, concerning what they claim is the Parole Board's class-wide policy.

Collateral estoppel is an affirmative defense to be pleaded and proved. Under the general principles of collateral estoppel:

> [A] judgment in a prior proceeding bars a party and its privies from relitigating an issue if, but only if: (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits.

*Carney v. Philippone*, 332 F.3d 163, 169-170 (2d Cir. 2003)(citations omitted).

Collateral estoppel under New York law is not automatic and the Court does not deem a ruling necessary at this stage in the litigation as to the three named Plaintiffs believed by Defendants to be collaterally estopped from litigating their claims. Were one or more individual Plaintiffs to be dismissed from the case, there are apparently ample Plaintiffs who have not previously litigated the claims raised in this case. This Court has already received letters from prisoners interested in the case, and additional cases have been filed as related to this case. For

22

purposes of disposing of this motion, the Court declines to find any Plaintiffs collaterally estopped from being a part of the lawsuit.

**Conclusion**

The Motion (Doc. Nos. 8, 9) is denied.

The Court has received numerous letters from prisoners interested in this case and as noted above, separate cases have been filed *pro se* by prisoners as "related" to this case. It may well be that this order "involves a controlling question of law as to which there may be substantial ground for difference of opinion" and it is possible that an immediate appeal from the order might materially advance the ultimate termination of the litigation," which is likely to be lengthy and expensive. The pendency of this litigation of necessity brings confusion to pending cases in the Division of Parole and adds to unrest in the prisons, as shown by the recent *pro se* filings. On request, the Court will confer with counsel and consider whether it should make the findings contemplated by 28 U.S.C. §1292(b), and permit an immediate interlocutory appeal. A case management conference with the Court is hereby set for July 28, 2006 at 11:00 a.m.

X

X

X

X

SO ORDERED.

Dated: White Plains, New York
       July 17, 2006

_Charles Brieant_

Charles L. Brieant, U.S.D.J.